UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| LISA W.,[1] | : Case No. 3:22-cv-194 |
| Plaintiff, | : Magistrate Judge Peter B. Silvain, Jr. |
| | : (by full consent of the parties) |
| vs. | : |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

## DECISION AND ENTRY

This matter has returned before the Court for review of Plaintiff Lisa W.'s claim challenging the Social Security Administration's denial of her application for Supplemental Security Income (SSI). This case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), and the administrative record (Doc. #8).

**I.    Background**

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

performing "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

In the present case, Plaintiff applied for benefits on August 29, 2013, alleging disability due to anxiety, depression, high blood pressure, and back pain. After Plaintiff's application was denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Benjamin Chaykin. On August 3, 2015, ALJ Chaykin concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. (Doc. #8-2, *PageID* #s 50-67). After the Appeals Council denied review, Plaintiff filed a previous case in the United States District Court for the Southern District of Ohio, and based on a Joint Stipulation of the parties, this Court remanded the case to the Commissioner. *See Lisa W. v. Comm'r of Soc. Sec.*, No. 3:16-cv-233 (S.D. Ohio June 30, 2020); (Doc. #8-9, *PageID* #s 1014-24). This matter was remanded twice more by the Appeals Council on April 25, 2019, and again on November 5, 2020. *Id.* at 1079-1084, 1119-1124. Upon the last remand, ALJ Gregory Kenyon held a subsequent hearing via telephone and issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since August 29, 2013, the date of the current pending application.

Step 2: She has the severe impairments of deep venous thrombosis of the left lower extremity, obesity, depressive disorder, and anxiety disorder.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

| | |
|---|---|
| Step 4: | Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work … subject to the following limitations: (1) no climbing of ladders, ropes, or scaffolds; (2) no work around hazards such as unprotected heights or dangerous machinery; (3) no use of the left lower extremity for foot controls; (4) standing or walking for no more than 20 minutes at a time; (5) simple, routine, repetitive tasks; (6) occasional superficial contact with co-workers and supervisors (superficial contact is defined as able to receive instructions, ask simple questions, and accept performance appraisals but lacking the ability to engage in more complex social interactions such as persuading others or resolving interpersonal conflicts); (7) no public contact; (8) no teamwork or tandem tasks[;] (9) no fast-paced production work or strict production quotas; and (10) limited to performing jobs which involve very little, if any, change in job duties or work routine from one day to the next." |
| | She has no past relevant work. |
| Step 5: | She can perform a significant number of jobs that exist in the national economy. |

(Doc. #8-8, *PageID* #s 901-17). Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability since August 29, 2013, the date the application was filed. *Id.* at 917.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #8-8, *PageID* #s 897-917), Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #11), and Plaintiff's Reply (Doc. #12). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742,

745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Discussion

In her Statement of Errors, Plaintiff contends that the ALJ erred in his evaluation of the medical opinions in the record. (Docs. #s 9 and 12). The Commissioner maintains that substantial evidence supports the ALJ's decision. (Doc. #11).

Social Security Regulations provide that an ALJ is required to consider every medical opinion in the record and weigh each according to factors like the nature of the relationship, supportability, consistency, and specialization. 20 C.F.R. § 416.927(c)(1)-(6). The Regulations recognize several different types of "acceptable" medical sources: treating physicians, non-treating, yet examining physicians, and non-treating, record-reviewing physicians." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *see* 20 C.F.R.§ 416.902. Generally, a treating doctor's opinion is entitled to more weight, and an ALJ must give good reasons for the

weight given a treating doctor's opinion. *See* 20 C.F.R. § 416.927(c)(2); *Gayheart*, 710 F.3d at 376. Indeed, when the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record[,]" the ALJ is required to place controlling weight on the treating source's opinion.[2] *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

Nonetheless, an ALJ may discount a medical source's opinion, including a treating source's opinion, when the source fails to explain or provide objective medical evidence to support his or her opinion or if the source's opinion is inconsistent with the record as a whole. *See* 20 C.F.R. § 416.927(c); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). In addition, although medical source opinions about what an individual can still do or the individual's restrictions are relevant evidence, such opinions are not determinative because the ALJ has the responsibility of assessing the individual's RFC. *See* 20 C.F.R. §§ 416.927(d)(2), 416.945(a)(3), 416.946(c); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).

In this case, Plaintiff first challenges the ALJ's evaluation of the medical opinion from treating psychiatrist, Jack Lunderman, M.D. (Doc. #9, *PageID* #s 3001-03). In addition to the medical records submitted from his treatment of Plaintiff, (Doc. #8, *PageID* #s 433-51, 541-66, 691-94, 702-06, 1624-31), Dr. Lunderman completed a statement on May 11, 2012, in which he indicated that he had been treating Plaintiff for moderate to severe depression, generalized anxiety disorder, and panic disorder. (Doc. #8-7, *PageID* #s 428-30). When discussing her mental status

---

[2] On January 18, 2017, the Social Security Administration promulgated "Revisions to Rules Regarding the Evaluation of Medical Evidence," which, among other things, served to eliminate the treating physician rule for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017)(to be codified at 20 C.F.R. pts. 404, 416). Since Plaintiff's application was filed prior to the effective date of March 27, 2017, the treating physician rule is still applicable to her claim.

abnormalities, Dr. Lunderman reported that Plaintiff experiences markedly intense anxiety/panic attacks and is unable to cope with life's stressors. *Id*. at 429. He also noted that Plaintiff's suffers from sleep disturbances with insomnia for which she gets some limited relief from medication. *Id*. Dr. Lunderman also reported that Plaintiff has intermittent and unpredictable suicidality, mood instability with episodes of marked depression, and does not function well in crowds or public places. *Id.* She also experiences psychomotor agitation and has limited insight and judgment. *Id*. As for Plaintiff's cognitive status, Dr. Lunderman reported that she has limited coping skills; low frustration tolerance; diminished ability to concentrate; poor persistence; unable to complete tasks; and problems with recent recall, short-term memory. *Id.* As for Plaintiff's daily activities, Dr. Lunderman indicated that she cares for her handicapped children but has poor coping skills. *Id*. She is not able to function in crowded places and has a history of unstable relationships. *Id*. Finally, Dr. Lunderman indicated that Plaintiff's anxiety and panic disorders are being treated with medication, but she has been unable to maintain a euthymic mood, and her ability to function in a productive manner is marginal with stress. *Id*. at 430.

Dr. Lunderman updated his questionnaire on Plaintiff's mental functionality in July 2013. *Id*. at 537-39. In this questionnaire, Dr. Lunderman indicated that Plaintiff has marked anxiety; panic attacks with agoraphobia; treatment resistant sleep disturbances; intermittent and unpredictable bouts of debilitating depression with suicidal factors; marked mood instability; limited coping skills; low stress tolerance; diminished ability to concentrate or focus; unable to multitask; and poor recent recall. *Id*. at 538. He further described Plaintiff as agoraphobic and noted that she is not able to function in a predictable manner outside the home. *Id*. Dr. Lunderman opined that this stems from Plaintiff's experience of being robbed at gunpoint and from her ex-

boyfriend stalking her. *Id*. Dr. Lunderman then reiterated his opinion that Plaintiff's symptoms have limited response to medications and that she is unable to maintain a stable, euthymic mood or maintain the ability to function in a predictable manner. *Id*. at 539.

Lastly, in August 2014, Dr. Lunderman certified that Plaintiff is disabled for purposes of Section 8 housing assistance eligibility, noting she is "disabled" with an inability to engage in any substantial gainful activity commencing "prior to 2011" and lasting permanently. (Doc. #8-7, *PageID* #833).

In collectively discussing Dr. Lunderman's opinions, the ALJ stated:

> All of [Dr. Lunderman's] assessments are entitled to little weight. Dr. Lunderman seems to have based all of his various assessments upon uncritical acceptance of [Plaintiff]'s subjective complaints concerning her condition[]. As detailed above, Dr. Lunderman's mental status examination records show stable mood and affect as well as relatively intact mental functioning.

(Doc. #8-8, *PageID* #905) (record citation omitted).

The ALJ further critiqued Dr. Lunderman's opinions on Plaintiff's level of social functioning by citing to Plaintiff's ability to get married and go on a honeymoon, shop for groceries, and maintain the household, stating that Plaintiff's "anxiety and depression are reasonably well controlled and that any such symptoms are not so pervasive that she cannot function socially." *Id*. at 906. Similarly, the ALJ stated that while Plaintiff "may have low stress tolerance and limited coping skills, [] there is no convincing evidence to show that episodes of psychological decompensation occur at a frequency indicative of disability." *Id*. In support of this determination, the ALJ cited to treatment records where Dr. Lunderman reported stable mood and affect, normal concentration and thought processes, and reduced anxiety. *Id*. According to the ALJ, the "reports of Dr. Lunderman show that [Plaintiff]'s mental symptoms are subject to

effective control with treatment and the use of prescribed medication." *Id*. at 907. Finally, as to Dr. Lunderman's certification that Plaintiff is "disabled" with an inability to engage in any substantial gainful activity, the ALJ found the permanency of such a statement to be "highly speculative" and that the statement as a whole was "inconsistent with, and unsupported by, the overall evidence of record including Dr. Lunderman's own treatment records." *Id*.

This analysis fails, at least in part, to comply with the governing regulations. While the ALJ acknowledged that Dr. Lunderman served as Plaintiff's "treating physician" and addressed the issue of controlling weight, the ALJ did not properly analyze the opinion under the two conditions of the treating physician rule. That is, the ALJ failed to discuss whether Dr. Lunderman's opinion is (1) well supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with the other substantial evidence in the case record. Instead, the ALJ improperly reduced the two-step evaluation procedure mandated by the Regulations into solely consideration of the remaining factors in the Regulations, such as the "supportability" and "consistency" factors. *See* 20 C.F.R. § 416.927(c)(1)-(6). This constitutes error because the "supportability" and "consistency" factors—along with the others listed in the Regulations—"are properly applied only *after* the ALJ has determined that a treating-source opinion will not be given controlling weight." *Gayheart*, 710 F.3d at 376 (emphasis added) (citation omitted). The ALJ's focus on the factors "hinders a meaningful review of whether the ALJ properly applied the treating physician rule that is the heart of this regulation." *Id.* (citing *Wilson*, 378 F.3d at 544).

Further, by ignoring the two-stage analysis of the treating physician rule, the ALJ also failed to satisfy his obligation to "be sufficiently specific to make clear to any subsequent reviewers

the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188 at *5 (July 2, 1996); *see also Wilson*, 378 F.3d at 544-45 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.").

By collapsing the analysis of Dr. Lunderman's opinions into one step, the ALJ failed to evaluate his opinions under the correct legal criteria. "Because the reason-giving requirement exists to 'ensur[e] that each denied claimant receives fair process,' we have held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record.'" *Blakely*, 581 F.3d at 407 (quoting *Rogers*, 486 F.3d at 243).

Furthermore, the ALJ's review of the state agency psychologists' opinions is insufficient to allow the Court to meaningfully review his findings. As outlined above, when considering the various medical opinions submitted in a disability claim, the ALJ is subject to certain procedural requirements. The ALJ must "determine and articulate on the record the amount of weight given to the opinion." *Lantz v. Astrue*, No. CIV.A. 2:08-CV-966, 2010 WL 545894, at *1 (S.D. Ohio Feb. 16, 2010) (citing 20 C.F.R. § 404.1527(d); *Wilson v. Commissioner*, 378 F.3d 541 (6th Cir. 2004)).

In this case, the record contains the opinions of four state agency psychologists' opinions. In conjunction with Plaintiff's prior claim, Frank Orosz, Ph.D. and Mel Zwissler, Ph.D. concluded that Plaintiff was mildly limited in her activities of daily living and moderately limited in her

9

abilities to maintain social functioning and maintain concentration, persistence, or pace. (Doc. #8-3, *PageID* #s 135, 161). As a result, they opined that she could perform "simple routine tasks in which instructions can be repeated as necessary[]" and that such tasks should be "relatively static in nature and do not require a fast work pace." *Id*. at 137, 163-64. Additionally, because of her social and adaptive limitations, they recommended that Plaintiff be limited to "tasks in which she can work independently of others and have little to no contact with the general public[]" as well as "tasks in which changes are infrequent and can be explained." *Id*. at 137-38, 164.

As to Plaintiff's current application, state agency psychologist, Tonnie Hoyle, Psy.D., reviewed Plaintiff's mental health record in November 2013, and also found that Plaintiff was mildly limited in her activities of daily living and moderately limited in her abilities to maintain social functioning and maintain concentration, persistence, or pace. (Doc. #8-3, *PageID* # 187). Thus, she opined that Plaintiff was capable of "perform[ing] routine 1-4 step tasks in a setting that is relatively static and predictable. She should not be required to maintain high production quotas/ sustained fast pace. She is capable of brief and superficial contact with supervisors and co-workers, but contact with the general public should not be a requirement of performing duties." (Doc. #8-3, *PageID* #191).  In January 2014, Deryck Richardson, Ph.D. reviewed Plaintiff's mental health record upon reconsideration and adopted Dr. Hoyle's findings in full.  *Id.* at 199-203.

Upon review, the ALJ assigned "substantial weight" to the opinions of Drs. Orosz, Zwissler, Hoyle, and Richardson. (Doc. #8-8, *PageID* #s 907). In so concluding, the ALJ's analysis stated in full:

> Substantial weight is afforded the assessments of the DDD reviewing psychologists, Drs. Orosz, Zwissler, Hoyle, and Richardson. One reason cited by the Appeals Council for the remand was that the prior decision did not limit

> [Plaintiff] to "superficial" social contacts (as was found to be applicable by Drs. Hoyle and Richardson). This restriction has now been included with an appropriate specific definition of superficial contacts (see Finding No. 4). The other functional (mental) restrictions imposed by the DDD psychologists have also been included in the applicable residual functional capacity.

*Id*. (record citation omitted).

Significantly, the ALJ fails to explain *why* he assigned substantial weight each of these opinions of the state agency psychologists. As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes." *Bailey v. Comm'r of Soc. Sec.*, 173 F.3d 428, 1999 WL 96920 at *4 (6th Cir. Feb, 2, 1999). *See also Hurst v. Sec'y. of Health and Human Services*, 753 F.2d 517 (6th Cir. 1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) No. 82–62, 1982 WL 31386, at *4 (Soc. Sec. Admin. Jan. 1, 1982) (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained"). Here, the ALJ's evaluation of the state agency psychologists' opinions does not build an accurate and logical bridge between the evidence and his conclusion. Indeed, such a conclusory analysis of these psychologists' opinions amounts to reversible error. *See Schumpert v. Comm'r of Soc. Sec.*, 310 F. Supp. 3d 903, 910 (S.D. Ohio 2018); *Woodcock v. Comm'r of Soc. Sec.*, 201 F. Supp. 3d 912, 920 (S.D. Ohio 2016); *Hollon v. Comm'r of Soc. Sec.*, 142 F.Supp.3d 577, 584 (S.D. Ohio 2015) (holding that "[s]imply restating a non-treating source's opinion and offering a conclusory assessment, without further discussion, fails to satisfy the requirement that the ALJ provide meaningful explanation of the weight given to all the medical opinion evidence").

Further, it is well-settled that the opinion of a non-treating "one-shot" consultative physician or medical advisor cannot constitute substantial evidence to overcome the properly supported opinion of a physician who has treated a plaintiff over a period of years. *See Lashley v. Sec'y of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983). Here, as acknowledged by the ALJ himself, Plaintiff has had a longstanding and extensive treatment with Dr. Lunderman. (Doc. #8-8, *PageID* #906).

Moreover, in conducting his review, the ALJ applied a more rigorous scrutiny to Dr. Lunderman's opinions than to those of the non-treating and non-examining opinions of Drs. Orosz, Zwissler, Hoyle, and Richardson. The Sixth Circuit has found that this is precisely the inverse of the analysis that the regulation requires. *Gayheart*, 710 F.3d at 379; *see also* 20 C.F.R. § 416.927(c); SSR No. 96-6p, 1996 WL 374180, at *2 (Soc. Sec. Admin July 2, 1996). As a result, the ALJ's decision indicates that his assessment of the mental health opinion evidence failed to abide by the regulations and, therefore, calls into question the ALJ's analysis. *See Cole v. Astrue,* 661 F. 3d 931, 937 (6th Cir. 2011) ("An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence." (internal quotation marks omitted)).

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[3]

## IV. Remand

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478

---

[3] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to remand of this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-

step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. #9) is **GRANTED;**

2. The Commissioner's non-disability finding is **VACATED**;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

5. The case is terminated on the Court's docket.

September 7, 2023

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge